IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| M & N TRADING, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>BOFA SECURITIES, INC., MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, AND JOHN DOES 1-20,<br><br>                Defendants. | Case No. 24-cv-1229<br><br>Honorable Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

In this lawsuit, Plaintiff alleges that Defendants used spoofing tactics to artificially move prices of U.S. Treasury Futures between at least October 2014 through February 2021 in violation of the Commodity Exchange Act. Specifically, Plaintiff alleges that Defendants manipulated U.S. Treasury Futures by: (1) entering small initial U.S. Treasury Futures orders; (2) entering a large, spoof order on the opposite side of the corresponding U.S. Treasury Securities, distorting actual supply or demand; (3) executing the initial U.S. Treasury Futures order at an artificial price; and (4) cancelling the large, spoof order before it could be executed. Defendants moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1), claiming that the Complaint fails to state a claim upon which relief can be granted and for lack of standing. For the reasons stated below, Defendants' motion [29] is granted.

### Legal Standard

Defendants move to dismiss the Complaint based on Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion tests whether the Court has subject-matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820

(7th Cir. 2009). The plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). The Court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995)

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Heredia v. Capital Management Services, L.P.*, 942 F.3d 811, 814 (7th Cir. 2019). However, a complaint must consist of more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Moreover, complaints alleging fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This requires describing the 'who, what, when, where, and how' of the fraud." *In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 435 F. Supp. 3d 845, 854 (N.D. Ill. 2020), *aff'd sub nom. Barry v. Cboe Glob. Markets, Inc.*, 42 F.4th 619 (7th Cir. 2022) (quoting *Menzies v. Seyfarth Shaw LLP*,

943 F.3d 328, 338 (7th Cir. 2019)). However, allegations of a person's state of mind may be alleged generally. Fed. R. Civ. P. 9(b).

## Discussion

Applying the above principles, the Court will address the five primary issues Defendants raise with the Complaint. First, Defendants contend that Plaintiff does not have standing under Article III or the Commodity Exchange Act because it failed to adequately allege an actual injury. Second, Defendants argue that the Commodity Exchange Act does not allow Plaintiff to pursue relief where the alleged manipulation concerned a government security, and that the statute does not allow a private right of action for spoofing. Third, Defendants claim that Plaintiff's allegations are conclusory and fail to state a claim. Fourth, they assert that the claims are time barred by the Commodity Exchange Act's two-year statute of limitations. Fifth, Defendants assert that Plaintiff failed to state a claim for vicarious liability or unjust enrichment. The Court will address each of these in turn.

### I. Article III Standing and Commodity Exchange Act Actual Damages

Defendants argue that even if there is a statutory basis for the Plaintiff to bring these claims under the Commodity Exchange Act, Plaintiff lacks standing. Specifically, Defendants contend that Plaintiff's most detailed allegation of injury is that on specific days, only ten of which Plaintiff traded, the U.S. Treasury prices were artificially altered due to the Defendants' alleged spoofing. According to Defendants, this is insufficient to demonstrate an injury-in-fact sufficient for Article III standing or to allege actual damages as required by the Commodity Exchange Act.

#### a. Article III Standing

Before addressing the substantive issues raised in the Defendants' motion, as a threshold issue, Plaintiff must have Article III standing to bring this claim. Defendants raise the issue of

3

lack of Article III standing by stating that Plaintiff failed to allege an injury-in-fact for the same reasons it failed to allege actual damages under the Commodity Exchange Act. However, Article III standing is a separate question which has a lower pleading standard than that for the substantive cause of action. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021); *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) ("It is well established in principle that the pleading standard for constitutional standing is lower than the standard for a substantive cause of action."). To establish Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To establish injury in fact, a plaintiff must show that they "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). There are minimal requirements for a plaintiff to sufficiently allege an injury for purposes of standing, which can be met even if actual proof of those facts is improbable, and the chance of recovery is remote. *Diedrich v. Ocwen Loan Servicing*, LLC, 839 F.3d 583, 590 (7th Cir. 2016). "Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013). The fact that a plaintiff may have difficulty proving damages does not mean they cannot have been injured.

Here, Plaintiff alleges that it was injured by Defendants' spoofing because it had to purchase futures contracts at artificially high prices or sell its futures contracts at artificially low prices. Compl. [1] ¶¶ 89–108. As an example, Plaintiff alleges that on November 18, 2014, one of Defendants' traders placed an iceberg order to sell a total of 200 Ultra Treasury Bonds Futures contracts, which had a par value of $20 million. Compl. [1] ¶ 89. The trader then placed a

4

manipulative spoof order to buy $50 million par value of U.S. 30-year Treasury Bonds at the price of 99.140625. *Id.* Plaintiff alleges that the spoof order signaled increased demand for U.S. 30-year Treasury Bonds, which artificially increased the market price of Treasury Futures contracts, including Ultra Treasury Bond Futures. *Id.* Plaintiff alleges Treasury Bonds and Futures are interconnected because market participants in the secondary cash market for Treasury Securities review the bids and offers for Treasury Securities and Treasury Futures to consider the balance in the market. *Id.* ¶ 26. Plaintiff alleges that "if the order book for 30-Year T-Bonds is imbalanced with significantly more displayed quantity for the best-bid level compared to the best-ask level, then market participants may reasonably believe that there is more demand to purchase 30-Year [Treasury Bonds] than supply and that prices for 30-Year [Treasury Bonds], and the corresponding Ultra [Treasury Bonds] Futures contract, will increase." *Id.* ¶ 27. Plaintiff also alleged that the commodity underlying an Ultra Treasury Bond Futures contract "is U.S. Treasury Bonds with a remaining term to maturity of not less than twenty-five (25) years from the first day of the futures contract delivery month." *Id.* ¶ 61. The Second Circuit in *Harry v. Total Gas & Power N. Am., Inc.*, found Article III standing when the plaintiffs alleged a plausible interconnection between U.S. natural gas hubs and the prices of derivative contracts based on those hubs. 889 F.3d 104, 111 (2d Cir. 2018). Similarly, here Plaintiff sufficiently alleges the interconnection between the U.S. Treasury Bonds and Futures market and that Defendants' spoofing cause Plaintiff's alleged injury. This is enough to plead constitutional standing.

      **b. Actual Damages**

In addition to establishing Article III standing, to bring a claim under Section 22, a private plaintiff must allege they suffered actual damages resulting from the violation. 7 U.S.C. § 25(a)(1). The analysis to establish an actual injury looks very similar to the injury in fact analysis used to

determine constitutional standing, however, "because it is an element of a substantive cause of action, the pleading requirements differ. Injury must be plausible, not just colorable." *Total Gas*, 889 F.3d at 112. For one trader to allege they were harmed by another, the plaintiff "must plausibly allege (1) that [they] transacted in at least one commodity contract at a price that was lower or higher than it otherwise would have been absent the defendant's manipulations, and (2) that the manipulated prices were to the plaintiff's detriment." *Id.* (citing 7 U.S.C. § 25(a)(1)(D)). A plaintiff can do this by showing they traded directly with the defendant and that they were on the net losing end of the transaction, although this is difficult to do without discovery on often-anonymous trading platforms. Alternatively, a plaintiff can plead enough facts to make a plausible inference that the price of their trades with third parties were substantially influenced by a defendant's conduct. This is what Plaintiff attempts to do here.

Defendants' initial attack on Plaintiff's actual damages is that Plaintiff fails to allege a connection between the 30-year Treasury Bonds and the Ultra Treasury Bond Futures. In the commodity and derivatives markets, which includes the U.S. Treasury Futures Plaintiff traded, it is sufficient to allege that defendants were trading in the same instrument as plaintiff or in an instrument that is linked to plaintiff's instrument. *Total Gas*, 889 F.3d at 113. However, the alleged link must be more than a boilerplate pleading. Here, Plaintiff alleges that the commodities underlying the Ultra U.S. Treasury Bond Futures are U.S. Treasury Bonds with a remaining term to maturity of not less than twenty-five years from the first day of the futures contract delivery month. Compl. [1] ¶ 61. Plaintiff also alleges that an imbalanced 30-Year Treasury Bond order book with more displayed quantity for the best-bid level compared to the best-ask level can be reasonably interpreted by market participants as there being more demand to purchase 30-Year Treasury Bonds than supply and that prices for 30-Year Treasury Bonds, and the corresponding

6

price for Ultra Treasury Bond Futures contracts will increase. *Id.* ¶ 27. These allegations are sufficient, and more than boilerplate pleading, to establish a link between the 30-Year Treasury Bonds and Ultra U.S. Treasury Bond Futures to survive a motion to dismiss.

Next the Defendants argue that Plaintiff failed to allege actual damages from the alleged spoofing. Plaintiff's allegations of damages fall into two categories. First, Plaintiff provides ten examples of dates on which it traded Ultra Treasury Bond Futures contracts on the same day as Defendants' alleged spoofing manipulated Ultra Treasury Bond Futures contract prices making them artificially high or low. Compl. [1] ¶¶ 89–108. Second, Plaintiff alleges thirty-six other dates where Defendants' spoofing manipulated Ultra Treasury Bond Futures contract prices making them artificially high or low, but without an allegation that Plaintiff traded on those dates. *Id.* ¶¶ 109–155. Defendants argue that both of these categories fail to allege any actual damages.

The allegations here are substantially similar to the allegations discussed in *Gamma Traders - I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 76 (2d Cir. 2022). In *Gamma*, the plaintiff brought the same four causes of action and relied on information revealed by various government investigations to identify nine dates on which the defendant was spoofing prices and plaintiff traded and that defendants' spoofing extended to thousands of other trades. *Id.* Regarding the nine instances where Gamma traded on the same day that defendants alleged spoofing impacted prices, the Second Circuit found that the plaintiff failed to plead, even in general terms, "how long it takes for the market price to return to a non-artificial level after a spoof" or when in relation to the defendants alleged spoofing plaintiff's trades occurred. *Id.* at 80. If plaintiffs traded before defendants' alleged spoofing, then they could not plausibly have been impacted by it. Even if the court assumed that plaintiffs traded after defendants' spoofing, there was no factual allegation to justify an inference that the spoofing effects lasted throughout the day. Instead, the court found it

7

insufficient to merely allege: "Defendants' manipulation of the markets for precious metals futures contracts caused prices to be artificial throughout the Class Period." *Id.* But the Second Circuit noted that it might be possible to state a claim without pleading how long the effects of spoofing lasted if that plaintiff pled "that its trades occurred so close in time to Defendants' spoofing as to permit us to infer as a matter of common sense that the market prices were artificial when [plaintiff] traded." *Id.*

Plaintiff's claims fail for the same reason. Plaintiff did not allege how long prices were artificially impacted because of Defendants' trades. Plaintiff merely states in conclusory language that "Defendants' spoofing had a lasting impact on the market for Treasury Futures well beyond the time the manipulative spoof orders were placed." Compl. [1] ¶ 158. This is not enough. Plaintiff does not allege when it traded in relation to Defendants' alleged spoofing, to allow the court to infer that market prices were still artificial when Plaintiff traded. Plaintiff only alleges that it traded on the same day as Defendants' spoofing. But spoofing is a form of manipulation that occurs in short periods of time. *See United States v. Coscia*, 866 F.3d 782, 787 (7th Cir. 2017) ("spoofing, like legitimate high-frequency trading, utilizes extremely fast trading strategies."); Compl. [1] ¶ 72 (citing the FINRA Letter of Acceptance, Waiver, and Consent which provides examples of BofA Securities traders' spoofing lasting between 783 milliseconds and 8 seconds (Doc. [37-1] at 6–7)). Thus, simply making allegations of trading on the same day without noting more detail about the timing is insufficient. Indeed, it is entirely possible, based on the way Plaintiff has alleged the claim, that its trading occurred before the spoofing conduct even began. Courts do not require hyper-specific allegations—such as pleading that the trading happened within milliseconds or even minutes—but there must be some allegation of timing that allows a common-sense inference to be made. *See Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*,

2023 WL 9102400, at *30 (S.D.N.Y. Dec. 29, 2023), *report and recommendation adopted sub nom. Nw. Biotherpeutics, Inc. v. Canaccord Genuity LLC*, 2024 WL 620648 (S.D.N.Y. Feb. 14, 2024) (finding that allegations of trades happening within an hour were sufficient); *Kessev Tov, LLC v. Doe(s)*, 2023 WL 4825110, at *7 (N.D. Ill. July 27, 2023) (finding sufficient for loss causation allegations that defendants' conduct happened before 9:00 am on August 24, 2015, causing higher prices and plaintiffs being forced to close their positions shortly thereafter); *LJM Partners, Ltd. v. Barclays Cap. Inc.*, 2023 WL 6311471, at *16 (N.D. Ill. Sept. 28, 2023) (finding allegations that the manipulation impacted the market for the entire afternoon of February 5 and the morning of February 6 were sufficient to support a Commodity Exchange Act manipulation claim). As pled, without more detailed allegations, the Court finds Plaintiff did not adequately allege actual damages for these ten dates under the Commodity Exchange Act.

Additionally, the Second Circuit rejected the argument for actual damages based on plaintiff's allegations that defendants spoofed a million trades and that on at least one of them he must have come out on the losing side. *Gamma*, 41 F.4th at 78. The court held that pleading on sheer statistical probabilities did not establish that the allegations were plausible—as opposed to merely speculative—and were insufficient. *Id.* at 79. Similarly, Plaintiff has not established that it is plausible that it suffered actual damages, as opposed to speculative damages, for the thirty-six dates that it was not trading.

While Plaintiff correctly notes that *Gamma* is not binding precedent, the Court finds its reasoning persuasive and consistent with the analysis done by another district court in the Northern District of Illinois.[1] In *LJM Partners, Ltd. v. Barclays Cap. Inc.*, the court found that plaintiff's

---

[1] Plaintiff instead asks the Court to rely on *Kohen v. Pac. Inv. Mgmt. Co.*, but that case involved considering whether to certify a class action when Defendants argued that some of the class members might not have actual injuries, but where Defendants did not challenge the right of one of the named plaintiffs to bring the claims. 571 F.3d 672, 676–77 (7th Cir. 2009).

9

allegations were sufficient to allege actual damages when the plaintiffs pointed to trades made the afternoon of February 5th and morning of February 6th when the VIX was artificially high due to defendants' manipulation. 2023 WL 6311471, at *16 (N.D. Ill. Sept. 28, 2023). However, the allegations about the shifts in the market as a result of the alleged manipulation, and therefore the injury to the plaintiff, in *LJM Partners* were far more detailed than what was alleged here. For example, in *LJM Partners* the plaintiff alleged:

- Sometime around 1:20 p.m. the VIX began to increase rapidly and by 1:57 p.m., the VIX had increased 61.6% from its opening position.
- At the close of trading on February 5, 2018, the VIX had increased 116%, which represented the largest daily move in the history of the VIX.
- These trades resulted in a loss of approximately $334.9 million for LJM and $430 million for Two Roads by the close of trading on February 5, 2018.

*Id.* at *5. In *LJM*, the complaint at least identified a period of time when prices were artificially inflated and its own trading (i.e. the afternoon of February 5, 2018), along with potential losses. But here, Plaintiff does not allege the timing of Defendants' trades, the timing of its own trades, the impacts Defendants' trades had on the market, or the amount of Plaintiff's alleged losses as a result. Without any of these details, the Court cannot find that Plaintiff sufficiently alleged actual damages under the Commodity Exchange Act.

Although the Court grants Defendants' motion on Counts I and II for failing to allege actual damages, because the Court is giving Plaintiff leave to amend, it will address the Defendants' remaining arguments.

II. **Actionable Claims Under the Commodity Exchange Act**

Defendants argue the Complaint should be dismissed because Plaintiff failed to allege actionable claims under the Commodity Exchange Act. This argument is two-fold. First, Defendants assert that Plaintiff's claims are barred by the Treasury Amendment to the Commodity Exchange Act. Second, Defendants argue that there is no private right of action for spoofing.

10

a. **Treasury Amendment**

The Treasury Amendment limits the scope of the Commodity Exchange Act by establishing that it does not govern or apply to an agreement, contract, or transaction in, among other things, government securities. 7 U.S.C. § 2(c)(1)(B). Defendants contend that Plaintiff only alleges purported spoofing in the U.S. Treasury Securities market and not in the U.S. Treasury Futures market; therefore, the alleged conduct falls entirely within the Treasury Amendment exclusion. Plaintiff counters that the allegations of purported spoofing activities in the U.S. Treasury Securities market that resulted in manipulations to the U.S. Treasury Futures market are covered under the scope of the Commodity Exchange Act.

The Court agrees that Plaintiff did not only allege trading in the U.S. Treasury Securities market for Treasury Bonds. While Plaintiff's allegations include references to Treasury Bond purchases, the Complaint also details the alleged manipulation in the futures market involving U.S. Treasury Futures. *See* Compl. [1] ¶ 89 ("On November 18, 2014, Sidney Lebental, while employed at Merrill Lynch, placed an iceberg order to sell a total of 200 Ultra T-Bond Futures contracts, which had a par value of $20 million. Then, Mr. Lebental placed a manipulative Spoof Order to buy $50 million par value of the U.S. 30-year Treasury bonds at the price of 99.140625. Mr. Lebental's manipulative Spoof Order signaled demand for U.S. 30-year Treasury bonds, which artificially moved the market price of Treasury Futures contracts, including Ultra T-Bond Futures contracts, higher."); *Id.* ¶ 97 ("On January 26, 2015, Sidney Lebental, while employed at Merrill Lynch, placed an iceberg order to buy a total of 100 Ultra T-Bond Futures contracts, which had a par value of $10 million. Then, Mr. Lebental placed a manipulative Spoof Order to sell $50 million par value of the U.S. 30-year Treasury bonds at the price of 113.375. Mr. Lebental's manipulative Spoof Order signaled supply for U.S. 30-year Treasury bonds, which artificially moved the market

11

price of Treasury Futures contracts, including Ultra T-Bond Futures contracts, lower."); *see also Id.* ¶¶ 91, 93, 95, 99, 101, 103, 105, 107 (alleging how a spoof order for 30-year Treasury Bonds artificially moved the price of Ultra Treasury Bond Futures contracts). Viewing the inferences in the light most favorable to Plaintiff, these allegations are sufficient to survive a motion to dismiss.

Moreover, Defendants cited case law is distinguishable from the facts here. Defendants primarily rely on *Premium Plus Partners., LP. v. Davis*, to argue that complaints with only allegations of improper trading of U.S. Treasury Securities cannot proceed as a private action under the Commodity Exchange Act. 2008 WL 2952345, at *3 (N.D. Ill. July 30, 2008). But that case involved a motion for summary judgment where the court declined to grant the motion on this ground when it was raised during a motion to dismiss as it should have been pled as an affirmative defense. *Id.*; *see Premium Plus Partners, L.P. v. Davis*, 2005 WL 711591, at *15 n.7 (N.D. Ill. Mar. 28, 2005). The other cases Defendants rely on do not involve U.S. Treasury Securities or Futures. *See Abrams v. Oppenheimer Gov't Secur., Inc.*, 589 F. Supp. 4, 7 (N.D. Ill. 1983) (Government National Mortgage Association securities that were not part of an exchange transaction); *Krause v. Forex Exchange Market, Inc.*, 356 F. Supp. 2d 332, 335–36 (S.D.N.Y. Feb. 10, 2005) (off-exchange foreign currency contracts). Therefore, the Court denies the Defendants' motion to dismiss on this ground.

### b. Private Right of Action for Spoofing

Next, Defendants argue that spoofing is a disruptive practice and not a manipulation and is thus not covered under the Commodity Exchange Act's private right of action. The Commodity Exchange Act provides a private right of action for any person "who purchased or sold a contract … or swap" for violations resulting from (1) "the use or employment of, or an attempt to use or employ … any manipulative device" or (2) "a manipulation of the price of any such contract or

12

swap or the price of the commodity underlying such contract or swap." 7 U.S.C. § 25(a)(1)(D)(i)–(ii).

Defendants argue that the Commodity Exchange Act defines and prohibits spoofing as a disruptive practice, therefore it is not a manipulation or a manipulative device. Defendants rely on *Braman v. The CME Grp., Inc.*, but the allegations in that case were markedly different than what is alleged here. 149 F. Supp. 3d 874, 885 (N.D. Ill. 2015). In *Braman*, the plaintiff brought claims against the futures exchanges for creating a marketplace fraught with manipulation, providing false information, and for failing to enforce the Commodity Exchange Act and CFTC rules; but it did not include allegations that the defendants tried to manipulate the price of commodities via spoofing. *Id.* Instead, Defendants rely on a *dicta* statement that the Commodity Exchange Act does not provide a private right of action for spoofing. *Id.* This argument is not persuasive.

Due to the lack of specific definition of "manipulation" or "manipulative device" in the Commodity Exchange Act, courts conduct a case-by-case analysis when evaluating whether alleged conduct is a violation. *See Frey v. CFTC*, 931 F.2d 1171, 1175 (7th Cir. 1991). The Seventh Circuit defined manipulation as "an intentional exaction of a price determined by forces other than supply and demand." *Id.* As alleged, Defendants' spoofing conduct resulted in a price change that was not reflective of basic forces of supply and demand. While a private plaintiff, unlike the CFTC, cannot bring an action specifically for spoofing under 7 U.S.C. § 6c(a)(5)(C), the Court finds no reason to prevent a plaintiff from raising spoofing as a type of manipulation under Section 22, merely because spoofing is listed as a disruptive practice in a separate section. Moreover, courts have routinely viewed spoofing as a form of manipulation. *See United States v. Coscia*, 866 F.3d 782, 793 n.40 (7th Cir. 2017) ("[I]t is clear that the purpose of spoofing is to artificially skew

13

markets and accordingly make a profit.); *United States v. Smith*, 555 F. Supp. 3d 563, 575 (N.D. Ill. 2021) ("Spoofing is just another way to artificially and deceitfully manipulate market prices."); *CFTC v. Skudder*, 2022 WL 17752392, at *6–7 (N.D. Ill. Dec. 19, 2022) (allowing the CFTC to proceed on a use of a manipulative or deceptive device claim based on spoofing allegations); *Kessev Tov, LLC v. Doe(s)*, 2023 WL 4825110, at *4 (N.D. Ill. July 27, 2023) ("Spoofing is simply one type of manipulative act … the hallmark of a manipulative act is whether it was intended to inject inaccurate information into the market."); *Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1061 (N.D. Ill. 2016) ("As many courts recognize, manipulation is not specifically defined in the [Commodity Exchange Act] because the methods and techniques of manipulation are limited only by the ingenuity of man.") (internal quotation omitted) (collecting cases). The motion to dismiss on this ground is denied.

### III. Failure to State a Claim

Defendants also argue that Plaintiff fails to state a claim under the Commodity Exchange Act in Counts I and II. Count I alleges a violation of the Commodity Exchange Act via price manipulation, which requires Plaintiff to allege that: "(1) the defendants possessed the ability to influence prices; (2) an artificial price existed; (3) the defendant caused the artificial price; and (4) the defendant specifically intended to cause the artificial price." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 764–65 (7th Cir. 2015). In Count II, Plaintiff alleges that Defendants violated the Commodity Exchange Act by using a manipulative device. To proceed on this claim, Plaintiff must plausibly allege "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the commodities at issue." *Mish Int'l Monetary Inc. v. Vega Cap. London, Ltd.*, 596 F. Supp. 3d 1076, 1097 (N.D. Ill. 2022).

a. **Ability to Influence Prices**

Defendants argue that Plaintiff failed to allege that Defendants' orders for 30-Year U.S. Treasury Bonds had the ability to influence U.S. Treasury Futures prices. In their brief, Defendants reference their previous argument about why Plaintiff fails to allege a connection between the 30-year Treasury Bonds and the Ultra Treasury Bond Futures, which the Court rejected above. Defendants do not make any additional arguments. For the reasons stated above, the Court finds that Plaintiff sufficiently alleged that Defendants orders for 30-Year U.S. Treasury Bonds had the ability to influence U.S. Treasury Futures prices.

b. **Existence and Cause of Artificial Prices**

Next, Defendants argue that Plaintiff failed to allege artificial prices existed. A price is artificial "when it does not reflect the market or economic forces of supply and demand." *CFTC v. Kraft Foods Grp.*, Inc., 153 F. Supp. 3d 996, 1022 (N.D. Ill. 2015) (internal quotation omitted). Determining whether a price is artificial requires an analysis "of the suspected price in context of the aggregate supply and demand factors." *Id.* But allegations of misconduct alone are insufficient. *Id.*

As discussed above, Plaintiff failed to allege details regarding the artificial prices of the U.S. Treasury Futures. Plaintiff does not allege what the price was before Defendants' conduct or how it increased or decreased after Defendants' conduct. This is unlike cases where courts found that the plaintiff sufficiently pled an artificial price. *See id.* (finding plaintiff sufficiently alleged that Kraft's $90 million position had the effect of raising futures wheat prices from $5.75 to $6.12.); *Mish Int'l Monetary Inc*, 596 F. Supp. 3d at 1086–87, 1096 (finding the complaint sufficiently pled the existence of an artificial price when it detailed the scheme including the timing, number of contracts, trading volume, and price). As Plaintiff did not adequately allege that

15

an artificial price existed, it follows that Plaintiff cannot have alleged that Defendants' conduct caused those prices to exist.

### c. Intent

Lastly, Plaintiff must allege intent to cause an artificial price. To establish intent, a plaintiff must allege facts giving rise to a plausible inference that the defendant "acted (or failed to act) with the purpose or conscious object of causing or effecting a price or price trend in the market that did not reflect the legitimate forces of supply and demand." *Mish Int'l Monetary Inc.*, 596 F. Supp. 3d at 1096 (quoting *CFTC v. Kraft*, 153 F. Supp. 3d at 1020). Intent can be inferred from circumstances. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 482 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009). "However, mere knowledge that 'certain actions might have an impact on the futures market is not sufficient to state a private claim under the [Commodity Exchange Act].'" *CFTC v. Kraft*, 153 F. Supp. 3d at 1020 (quoting *In re Rough Rice Commodity Litig.,* 2012 WL 473091, at *7 (N.D. Ill. Feb. 9, 2012)).

Defendants argue that Plaintiff only alleges that Defendants knew the orders would appear in the order book and be considered by other traders and that knowledge is not enough. While Defendants are correct in noting that mere knowledge is insufficient, if a complaint alleges an artificial price caused by the defendants conduct along with a fraudulent scheme, that is sufficient for the court to find intent on a motion to dismiss taking the allegations as true and viewing the inferences in plaintiff's favor. *See Id.* at 1021 (finding plaintiff sufficiently alleged the price drops were a reaction to Kraft's market position and that the complaint clearly alleged a fraudulent scheme). Here, as explained above, the Court finds that Plaintiff failed to allege Defendants' conduct caused an artificial price. Thus, the Court, regardless of whether a fraudulent scheme was sufficiently alleged, cannot find the Plaintiff sufficiently pled intent.

IV.     **Statute of Limitations**

Defendants next argue that Plaintiff's Commodity Exchange Act claims are time-barred because they were brought outside of the two-year statute of limitations. Defendants contend that, contrary to Plaintiff's allegations that it could not have discovered the injury prior to FINRA announcing its Letter of Acceptance, Waiver, and Consent with BofA Securities on November 29, 2023, Plaintiff should have reasonably known about its injury no later than September 2021 meaning the Complaint, filed in February 2024, is time-barred.

The Commodity Exchange Act provides a two-year statute of limitations period for a private cause of action. 7 U.S.C. § 25(c). The limitations period begins "when the plaintiff knew or in the exercise of reasonable diligence should have known of defendant's alleged misconduct." *Dyer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 928 F.2d 238, 240 (7th Cir. 1991). Raising the statute of limitations is an affirmative defense, as such "plaintiffs need not anticipate and attempt to plead around all potential defenses." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Further, motions to dismiss on statute of limitations grounds are rarely granted. *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). The defense is not an appropriate ground for dismissal when it depends on factual determinations. *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)[.]" *Id.* To grant the motion, it must be apparent on the face of the complaint that the plaintiff pled themselves out of court. *Xechem*, 372 F.3d at 901.

Taking the allegations in the Complaint as true, which the Court must when considering a motion to dismiss, it is not difficult to find a conceivable set of facts that would defeat a statute of

17

limitations defense. Plaintiff alleges that the electronic order book displays quantities of anonymous orders at various price points. Compl. [1] ¶ 40. The order book allows market participants to see the visible number of orders and the visible total number of contracts that all traders are actively bidding or offering at a given price level. *Id.* ¶ 41. However, the identities of traders who submit orders into the order book are anonymous. *Id.* ¶ 41. Therefore, it could not determine whether there was an alleged bad actor spoofing orders in real time. Plaintiff further alleges that it could not determine that the alleged spoofing occurred until FINRA issued the Letter of Acceptance, Waiver, and Consent to Bank of America Securities as that was the first time it was publicly disclosed. *Id.* ¶ 87. Plaintiff alleges the BofA Securities failed to reasonably supervise and monitor for spoofing, so there was no way for it, let alone anyone on the outside to know it occurred. *Id.* ¶ 72. These allegations establish a set of facts that could defeat the statute of limitations defense.

Despite this, Defendants assert that Plaintiffs should have been aware because of their participation in the market, the fact that an October 2020 news article said that the government was investigating spoofing, and that there was a prior FINRA settlement with one of the traders in September 2021. While the fact finder may eventually agree with the Defendants' contentions that Plaintiff was or should have reasonably been aware of these items, there remains a conceivable set of facts that could defeat the statute of limitations defense. As it is not apparent on the face of the Complaint that Plaintiff pled itself out of court, the Court denies Defendants' motion to dismiss on this ground.

V. **Vicarious Liability and Unjust Enrichment**

Lastly, Plaintiff brings claims for vicarious liability (Count III) and unjust enrichment (Count IV). The parties agree that the outcome of these claims turns on whether Counts I and II

are dismissed. *See Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1074 (N.D. Ill. 2016). As those Counts are dismissed, these claims are also dismissed because liability depends on the Defendants' liability in Counts I and II.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss [29] is granted. Plaintiff may refile an amended complaint if it can cure the deficiencies and such an amendment is consistent with its obligations under Federal Rule of Civil Procedure 11. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss."). If Plaintiff does not file an amended complaint by November 15, 2024, then the dismissal will automatically convert to a dismissal with prejudice.

**SO ORDERED.**

Dated: November 1, 2024

_____
Sunil R. Harjani
United States District Judge